## COMMONWEALTH vs. HOYT MOYLES.

No. 95-P-1817.

Hampden. November 18, 1997. - August 26, 1998.

Present: BROWN, SMITH, & LAURENCE, JJ.

*Kidnapping. Due Process of Law,* Prisoner's dock, Elements of criminal offense. *Practice, Criminal,* Request for jury instructions.

A Superior Court judge erred in denying a criminal defendant's motion to sit at counsel table during trial; however, the error was harmless beyond a reasonable doubt where the record did not demonstrate that the defendant had any difficulty conferring with counsel, or that separate seating diminished the effectiveness of counsel, or that the seating arrangement could have prejudiced the defendant, in light of the judge's instructions to the jury. [352-354] BROWN, J., concurring.

At the trial of an indictment for the kidnapping of a three year old child, the judge's refusal to instruct on an element of the offense as requested by the defendant, viz., that the Commonwealth was required to prove that the taking of the child (who was incapable of a legally cognizable will) was against the will of her mother (the lawful custodian), was reversible error, where that issue was in dispute and the judge's instructions completely eliminated the issue from the jury's consideration. [354-355] BROWN, J., concurring.

INDICTMENT found and returned in the Superior Court Department on August 31, 1993.

The case was tried before *Richard F. Connon*, J.

*Maxine Sushelsky* for the defendant.

*Deborah D. Ahlstrom*, Assistant District Attorney, for the Commonwealth.

SMITH, J. On August 31, 1993, the defendant was indicted for the crime of kidnapping a three year old girl, G. L. c. 265, § 26. A Superior Court jury returned a guilty verdict. On appeal, the defendant claims that the judge erred in (1) denying the defendant's motion to allow him to sit at counsel table during the trial; (2) denying the defendant's motion for a required finding of not guilty; (3) failing to charge on an essential ele-

ment of the offense of kidnapping; and (4) denying the defendant's motion to correct the language of the kidnapping indictment before the case was submitted to the jury. The defendant also claims that the prosecutor committed reversible error in some of her comments to the jury.

We summarize the evidence introduced by the Commonwealth. The defendant met Darlene Donahue (Donahue), who is the mother of the three year old child (the victim of the alleged kidnapping), at a bar in West Springfield on July 24, 1993. Over the next five days, Donahue and her child spent time with the defendant at the Ramada Inn where he was staying.

On July 29, 1993, a bizarre series of events occurred. The defendant arrived at Donahue's apartment at about 4:30 P.M. and told her that he had been mugged. He asked her to drive him to Connecticut so he could pick up a BMW automobile; instead she offered to take him to the bus or train station. The defendant accepted the ride, but at the end of Donahue's street the defendant asked her to stop; he thereupon got out of the car and ran into the woods, returning a short time later with a bloody shirt and a manila folder.

At this point, the defendant asked Donahue to drive him to an apartment complex located on Riverdale Road in West Springfield, where he claimed to have left his wallet and briefcase. Donahue agreed, and upon their arrival the defendant lifted the child out of the car, saying to her that he was going to show her her new home. Donahue then said "no" to her daughter, and instructed the child to stay with her. The defendant, who was holding the child in his arms, turned and walked toward the main door of a building. Instead of entering, however, he walked around the corner of the building and out of sight. Donahue became worried and got out of her car to search for the defendant and her daughter. When she could not find them, she returned to her vehicle and drove slowly out of the parking lot, looking between all of the buildings. The complex was located near the Ramada Inn, so she next stopped there to see if the defendant had returned to his room. When she determined he was not there, she called the West Springfield police.

Meanwhile, at approximately 8:15 P.M., the defendant and the child arrived at the Hampton Inn (hotel), which is also in West Springfield. The defendant entered the hotel with the child, and told the desk clerk that the girl's mother had abandoned her and

that he needed a room. The desk clerk recognized the defendant as the person who had rented a room one week earlier and had not paid. He had also been there the previous evening requesting a room and had left his pager as collateral, but had not returned. Because of her prior experience with him, the desk clerk informed the defendant that he would have to prepay for the room. The defendant offered her the use of a BMW automobile, and when she declined, he attempted to borrow money from one of the hotel's guests. Understandably, the desk clerk found his actions peculiar. Therefore, because the child appeared to be hungry, the clerk suggested that the defendant take the girl to a restaurant across the street. After the defendant left the premises, the clerk called the police and told them his whereabouts.

Upon arriving at the restaurant, the police observed the defendant "forcibly" holding the child. He reluctantly gave her to the officers and was arrested. The child had been missing for a little over one hour.

The theory of the defense was that Donahue had consented to the defendant taking the child with him, but panicked and called the police when she could not find them.[1]

1. *Denial of the defendant's motion to sit at counsel table.* The defendant filed a motion to sit at counsel table, which the Commonwealth did not oppose. The judge allowed the defendant to sit there during jury empanelment, but ordered him to sit on a wooden bench behind his counsel during the trial. The judge did not give any reasons for denying the defendant's request.

The defendant, relying on the Sixth and Fourteenth Amendments to the United States Constitution and article 12 of the Declaration of Rights of the Massachusetts Constitution, argues that, because he was ordered to sit behind instead of with his attorney, he was prejudiced in his defense because his ability to confer with and to assist counsel in his defense was diminished. He also claims that the seating arrangement caused the jurors to have a negative impression of him, thereby depriving him of a fair trial.

---

[1]The defendant did not testify, but Donahue testified that, when the defendant stepped out of the car with her child, she did not get out of her car, or otherwise attempt to prevent the defendant from taking the child with him. There was no evidence that the defendant threatened Donahue as he walked away with the child.

Some fifteen years before the trial of this matter, the Supreme Judicial Court ruled that "[o]rdinarily, a criminal defendant should be permitted to sit at counsel table" unless upon inquiry, the judge finds that some security measures are necessary. *Commonwealth* v. *Moore*, 379 Mass. 106, 110 (1979). If the judge denies a motion to sit at counsel table, the judge's reasons must be stated on the record. *Id.* at 111. *Commonwealth* v. *Drew*, 397 Mass. 65, 81 (1986). Here, the judge denied the motion without stating his reasons. Further, there is nothing in the record that demonstrates that the defendant posed a security risk at the trial. Therefore, we hold that the denial of the motion was error. We now consider whether the judge's error requires a new trial.

After the defendant filed his appellate brief raising the issue concerning the denial of his motion, the Commonwealth filed a motion requesting that the judge supplement the record by including a description of the location of the bench where the defendant sat in relation to counsel table.

The judge held a hearing on the motion, and recited findings into the record concerning the proximity of the bench and counsel table.[2] The judge found that there was only a short distance between counsel and the defendant's bench, and that if the defendant wanted to get his counsel's attention during trial, "all it would take is for [the defendant] to lean over and tap counsel on the shoulder or if counsel wanted to get the attention of [the defendant], simply turn around, there wouldn't be any problem at all." The judge also noted that the bench where the defendant sat was open on both sides, and was "no higher than the rest of the pews in the courtroom."

Neither the judge's findings nor the record demonstrates that "the defendant and his counsel had any difficulty conferring with each other or that separate seating diminished the effectiveness of defense counsel." *Commonwealth* v. *Drew, supra* at 81. We also reject the defendant's argument that the seating arrangement prejudiced him in the minds of the jury. *Id.* at 81 n.15.[3] The judge instructed the jury on the presumption of innocence, and that the case against the defendant should be

---

[2]The hearing afforded the judge another opportunity to state his reasons for the denial of the defendant's motion, but the judge failed, once again, to explain his decision.

[3]We note that the judge did not specifically caution the jury against drawing any adverse inferences from the separation of defense counsel and the defendant; no such instruction appears to have been requested.

decided on the evidence presented and not on any bias or prejudice. Therefore, on this record, we hold that the judge's error was harmless beyond a reasonable doubt.

Nevertheless, we emphasize, as the Supreme Judicial Court has done time and again, that a criminal defendant should be permitted to sit at counsel table unless, "on inquiry, the judge finds that some restraint is reasonably necessary to maintain order." *Commonwealth* v. *Drew, supra* at 81. We also reiterate that if the judge denies the motion, the reasons must be stated on the record.

2. *The judge's instructions to the jury.* The defendant was indicted under the first clause of G. L. c. 265, § 26, as appearing in St. 1971, c. 900, which states, "[w]hoever, without lawful authority, forcibly or secretly confines or imprisons another person within this commonwealth *against his will . . .* shall be punished. . . ." (Emphasis added.) Even though an essential element of the crime is that the taking must be against the *victim's* will, "[i]f a kidnapping victim is of such age . . . as to be incapable of having a recognizable will, the confinement must then be against the will of the parents or legal guardian of the victim." 1 Am. Jur. 2d Abduction and Kidnapping § 26 (1994). *Commonwealth* v. *Nickerson,* 5 Allen 518, 526-527 (1863) (nine year old child cannot consent to being forcibly taken from school room; his taking by agents of his mother was against the will of his lawful custodian, his father). Therefore, because the child in this matter was three years old at the time of the alleged incident, the Commonwealth had to show that the taking was against her mother's (Donahue's) will.[4]

At the charge conference, the defendant requested the judge to instruct the jury that the Commonwealth had to show that the taking of the child was against Donahue's will, as she was the lawful custodian of the child. The judge refused to so instruct, but informed defense counsel that he could argue in his closing statement to the jury that the taking of the child was not against the mother's will. Defense counsel did so argue to the jury.

The judge subsequently instructed the jury that the Commonwealth must prove beyond a reasonable doubt that the defendant "forcibly or secretly confined or imprisoned [the child] . . . against [her] will." He then stated that "[a]gainst

---

[4]The Commonwealth acknowledges in its brief that the law required it to prove that the taking was against the will of the lawful custodian.

her will means that the alleged victim did not consent to be confined, imprisoned or kidnapped by the defendant. A child of nine is incapable of giving a valid consent to forcible transfer by the defendant."[5] At the conclusion of the judge's charge, the defendant again objected and requested that the judge give the defendant's proposed instruction. The judge again refused and the defendant claims error.

A defendant is entitled to an instruction from the judge to the jury that correctly explains the applicable law. *Commonwealth* v. *Robbins*, 422 Mass. 305, 315 (1996). Here, the judge gave an erroneous instruction on one of the essential elements of the crime for which the defendant was on trial. In the circumstances of this case, the judge's error cannot be viewed as harmless. *Commonwealth* v. *Skinner*, 408 Mass. 88, 96-98 (1990). The question of whether the taking of the child was against the mother's will was in dispute. The judge's erroneous instruction went to the heart of the defendant's case and completely eliminated the jury's consideration of his defense.[6] "Thus the charge as a whole was substantially misleading as to a salient point of the case." *Commonwealth* v. *Benders*, 361 Mass. 704, 708 (1972). There must be a new trial.

3. *Other issues.* We briefly discuss other issues raised by the defendant that might arise at a new trial.

Viewing the evidence in the light most favorable to the Commonwealth, the judge did not commit error in denying the defendant's motion for a required finding of not guilty. *Commonwealth* v. *Titus*, 32 Mass. App. Ct. 216, 219-220 (1992).

Before the retrial, the judge should allow the defendant's motion to amend the indictment by removing the word "seize." That word only appears in clause three of G. L. c. 265, § 26, and the indictment was framed under clause one of the statute. See *Commonwealth* v. *Saylor*, 27 Mass. App. Ct. 117, 119-121 (1989) (judge properly allowed similar motion to amend by the Commonwealth).

---

[5]The *Nickerson* decision, *supra*, was obviously the source of the judge's cryptic comment that, "A child of nine is incapable of giving a valid consent to forcible transfer by the defendant."

[6]The Commonwealth claims that because the judge allowed the defendant to argue to the jury that Donahue consented to the taking of her child, any prejudice from the judge's erroneous instruction was eliminated. We disagree, because the judge told the jury in his instructions that they must take the law from him and not from the lawyers, and then proceeded to give an erroneous instruction on the law.

Because there will be a new trial, we need not discuss at length the prosecutor's improper closing argument. We note that there was no evidence of sexual molestation in this case. We are confident that during the new trial, the judge will make sure that the closing arguments are confined to matters that are in evidence.

The judgment is reversed and the verdict is set aside.

*So ordered.*

BROWN, J. (concurring). I am in full agreement with the majority. I wish, however, to emphasize that the trial judge's practice of routinely not allowing defendants to sit at counsel table is not only arbitrary, but it is also fraught with unfairness. There is a plethora of cases setting out explicitly the law relative to this issue. The majority cites merely two clear examples: *Commonwealth* v. *Moore*, 379 Mass. 106 (1979), and *Commonwealth* v. *Drew*, 397 Mass. 65 (1986).